FILED by _____ D.C.

ELECTRONIC

**Apr. 20, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

"IN ADMIRALTY"

The City of Riviera Beach,

      Plaintiff,

vs.

That certain unnamed gray, two-story vessel
approximately fifty-seven feet in length, her
engines, tackle, apparel, furniture,
equipment and all other necessaries
appertaining and belonging *in rem*,

      Defendant.

_____/

**09-80594-Civ-DIMITROULEAS/SNOW**

CASE NO.:

## VERIFIED COMPLAINT

Plaintiff, The City of Riviera Beach ("Plaintiff"), by and through its undersigned attorneys, hereby sues that certain unnamed, gray, two-story vessel approximately fifty-seven feet in length (the "Vessel"), her engines, tackle, equipment, furniture, auxiliary vessels, appurtenances, necessaries, etc., *in rem*, and alleges:

### Parties and Jurisdiction

1.    Plaintiff, at all relevant times, is a chartered Municipality which owns the Riviera Beach Municipal Marina (the "Marina"), located at 200 E. 13th St., Riviera Beach, Palm Beach County, Florida.

2.    Defendant Vessel, together with her engines, tackle, equipment, furniture, auxiliary vessels, appurtenances, necessaries, etc., is currently located at the Marina, Slip Number 452, Riviera Beach, Florida, and is therefore located within the jurisdiction of this Court. *See* Photograph of Vessel attached hereto as **Exhibit A**.

3.     This is an action within the admiralty and maritime jurisdiction of this Court as contemplated by 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.  This action is for damages pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, 46 U.S.C. § 31342, and Local Admiralty Rule C. Plaintiff has a maritime lien in Plaintiff's favor and against the Defendant Vessel, *in rem*, for necessaries supplied to the Vessel, namely dockage, and for tort damages arising from the Vessel's continued trespass on Marina property.

<u>**Background Facts**</u>

4.     On or before March 10, 2006, the Vessel's owner, on behalf of the Defendant Vessel, contracted with Plaintiff for dockage pursuant to a dockage agreement (the "First Agreement"), which was a standard agreement used by the Marina at the time. *See* First Agreement attached hereto as **Exhibit B**.

5.     On or about August 9, 2006, the Plaintiff gave notice to the Vessel owner of the termination of the First Agreement for the Vessel owner's breach and demanded the Vessel be removed. *See* Letter attached hereto as **Exhibit C**.

6.     The Vessel owner failed to remove the Vessel but continued to pay monthly dockage fees on behalf of the Vessel to the Plaintiff at the rate set forth in the terminated First Agreement.

7.     On or about June 20, 2007, the Riviera Beach City Council passed a resolution (the "City Resolution") requiring vessels docked at the Marina to: 1) secure and maintain liability insurance to specified limits and name the Marina as an additional insured; 2) show proof of valid registration or documentation; 3) be operational and capable of vacating the Marina in case of an emergency; and 4) to comply with the Florida Clean Vessel Act.

8.     On or about July 25, 2007, the Marina gave notice to all Marina customers of the new requirements, provided them with a new dockage agreement to be executed by September 30, 2007, and warned that any vessels not meeting the new requirements must vacate by October 1, 2007. *See* Notice attached hereto as **Exhibit D**.

9.     The Defendant Vessel owner failed to execute the required New Agreement but continued to pay monthly dockage fees on behalf of the Vessel to Plaintiff.

10.     On or about April 22, 2008, Plaintiff advised the Vessel owner concerning the Vessel owner's continued failure to comply with the City Resolution. *See* Letter attached hereto as **Exhibit E**.

11.     Between September 2006 and March 2009, the Vessel fell behind in dockage fee payments in an amount totaling $1,464.38 as of March 31, 2009. During this period, the Plaintiff provided the Vessel owner with monthly statements showing the unpaid balance on the Vessel's account.

12.     On or about March 6, 2009, Plaintiff gave final notice to Vessel's owner that the Vessel was behind in dockage fee payments and further advised the Vessel owner of the failure to execute the New Agreement required as a condition of keeping the Vessel at the Marina. The Notice required the Vessel owner to pay monies owed in full and to execute the New Agreement by April 1, 2009, or remove the Vessel from the Marina.

13.     The Vessel owner failed to pay the past due amounts or to execute the New Agreement, and the Vessel remains at the Marina without permission.

14.     The Vessel owner has not provided the Marina with proof of registration or documentation or proof of insurance, and is believed to possess neither.

3

15.     It is believed the vessel is not operational and is not capable of leaving the Marina under its own power in an emergency.

16.     It is believed the Vessel has no Marine Sanitation Device and is otherwise in violation of the Florida Clean Vessel Act.

17.     The Vessel poses a significant safety hazard to the Marina and other vessels, as it is in poor repair, is inadequately secured to the dock, presents a fire risk and is at risk of sinking. See Excerpt of independent marine surveyor Joel Sparrow's report attached hereto as **Exhibit F**.

18.     The Vessel in its poor state of repair exposes Plaintiff to liability for the risks it poses to other Marina customers, their vessels, and nearby facilities, and is believed to pose a risk to the environment, particularly in the event of a hurricane or similar weather event.

### Action

### Count I: Enforcement of Maritime Lien – Necessaries

19.     Plaintiff restates and incorporates Paragraphs 1 through 18 above as though fully set forth herein.

20.     As of the date of this Verified Complaint, Plaintiff has a statutory maritime lien for the provisioning of necessaries, specifically safe harbor and dockage, to the Defendant Vessel in the total amount of $1,464.38 for past due charges exclusive of attorneys' fees and costs. Additionally, for each day the vessel remains docked without permission, it is receiving necessaries, specifically safe harbor and dockage at the Marina's expense, reasonably valued at the Marina's normal daily rate of $1.50 per foot. As of the date of this Verified Complaint, the value of the dockage provided after March 31, 2009 is $1,710.00, and continues to accrue on a daily basis. As of the date of this Verified Complaint, the total amount of the maritime lien is $3,174.38.

4

21.     In addition to the above amounts, the Plaintiff is entitled to interest and costs, in amounts which will be proven at trial. As a result, Plaintiff was obliged to retain the law firm of Hamilton, Miller & Birthisel, LLP, 100 South Ashley Drive, Suite 1210, Tampa, Florida 33602, to protect its interest hereunder and will become responsible for paying Hamilton, Miller & Birthisel, LLP reasonable attorneys' fees and costs incurred herein.

<u>**Count II: Enforcement of Maritime Lien – Maritime Trespass**</u>

22.     Plaintiff restates and incorporates Paragraphs 1 through 18 above as though fully set forth herein.

23.     On or about March 6, 2009, the Vessel's owner was given notice of Plaintiff's April 1, 2009 revocation of permission to remain at the Marina based on the Vessel's delinquent account and the Vessel owner's failure to comply with the City's resolution.  See **Exhibit G.**

24.     As of the date of this Verified Complaint, Plaintiff has a maritime lien for the Defendant Vessel owner's intentional failure to remove the Vessel from its berth by April 1, 2009, despite a duty to do so, which constitutes a maritime tort.

25.     As a direct and proximate result of the Vessel remaining docked at the Marina without permission, the Marina  has been, and continues to be, damaged for loss of use of the slip and annoyance, together with interest and costs, the amounts of which will be proven at trial.

26.     In addition to interest and costs above, Plaintiff was obliged to retain the law firm of Hamilton, Miller & Birthisel, LLP, 100 South Ashley Drive, Suite 1210, Tampa, Florida 33602 to protect its interest hereunder and will become responsible for paying Hamilton, Miller & Birthisel, LLP its reasonable attorneys' fees and costs incurred herein.

**WHEREFORE**, for the two counts alleged above, individually and collectively, Plaintiff, prays:

5

A.     That process in due form of law according to the rules and practice of this Court in causes of admiralty and maritime jurisdiction be issued against the Vessel, her engines, tackle, equipment, rigging, furniture, auxiliary vessels, appurtenances, etc., *in rem*, citing it to appear and answer the matter aforesaid;

B.     That pursuant to Supplemental Admiralty Rule C and Local Admiralty Rule C, a warrant of arrest be issued against the Vessel;

C.     That judgment be entered, *in rem,* in favor of Plaintiff, The City of Riviera Beach, and against Defendant Vessel, recognizing Plaintiff's maritime lien;

D.     That the Vessel be condemned and sold to satisfy the lien of Plaintiff, including pre-and-post judgment interest, attorneys' fees and costs;

E.     That the Court enter judgment against the Vessel, for the amount of Plaintiff's damages, together with interest, administrative fees, costs, and attorneys' fees;

F.     That Plaintiff have such other and further relief as the law and justice may require.

Dated: April 20, 2009

Respectfully submitted,

JULES V. MASSEE
Florida Bar No.: 41554
jmassee@hamiltonmillerlaw.com
**ROBERT B. BIRTHISEL**
Florida Bar No.: 906654
rbirthisel@hamiltonmillerlaw.com
Hamilton, Miller & Birthisel, LLP.
100 South Ashley St., Suite 1210
Tampa, FL 33602
Phone: (813) 223-1900
Fax: (813) 223-1933
Attorneys for Plaintiff

6

STATE OF _Florida_ )
COUNTY OF _Palm Beach_ ) ss.

## VERIFICATION

Pursuant to 28 U.S.C. §1476, I, Edwin C. Legue, on behalf of The City of Riviera Beach,

verify under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct. Executed on April _20_, 2009.

_Edwin C. Legue_
Edwin C. Legue
Marina Director, City of Riviera Beach

SWORN TO AND SUBSCRIBED before me this April _20_, 2009.

_David Napier_
NOTARY PUBLIC

My Commission Expires: _11-24-2012_

Personally known _✓_ or produced identification _____

Type of identification produced _____



7






*Due in 3·19*   *n3H 18*
                *35*

# RIVIERA BEACH MARINA
# WET-SLIP OR DRY STORAGE AGREEMENT

WET-SLIP AGREEMENT ___X___ DRY-STORAGE AGREEMENT _____

POWER _____ SAIL _____ BERTH # _____

OWNER'S NAME _____FANE LOZMAN_____

ADDRESS _____345 Ocean Drive._____

_____Miami Beach Fl.____ ZIP __33139__

TELEPHONE Res (786) 251-5868 Work ( )

BOAT NAME _____

STATE & REG NO.: _____

MAKE __Issabel___ BEAM _12_ OVERALL LENGTH _57_

MONTHLY RATE _168.90_ PROFILE CHARGE _____
                        a 50 amp
ACCESSORY _100.00_ TAX _6558_ TOTAL _1074.48_

STAFF __Miguel___ DATE __3/10/06__

## IT IS AGREED AS FOLLOWS:

1.      ASSIGNED SPACE: It is understood and agreed by the Owner that the services provided by The City of Riviera Beach hereinafter "City", are limited to providing storage space with an in/out launching service according to the terms of this agreement. Owners of vessels assigned slips, moorings, or dry-storage spaces as may be specifically designated by the City at Marina facilities agree to relinquish their berth when requested by the City. The City agrees, insofar as possible, to temporarily reassign these Owners to suitable berths at the same facility if space is available, or otherwise credit the Owner with equivalent time (days) at then current transient dockage rates in effect for the same facility. In addition to all other power and authority retained by the City, the City may at any time, in its absolute discretion, require the Owner to remove the vessel from its assigned storage area to another storage area within the Marina, and if the Owner fails to comply, the City shall have the right to move the vessel itself. The City also reserves the right to, in its absolute discretion, move any vessel off the floating docks.

2.      PAYMENT: The Owner agrees to pay the City storage fee as specified by Ordinance and any subsequent amendments thereto. The Owner also agrees that said fee shall be based on a thirty day month, shall be due and payable in advance on the first day of each month, and shall be considered delinquent if not paid in full on or before the tenth day of the month. Payments should be made to the City of Riviera Beach, c/o Marina. Delinquent accounts shall be subject to an automatic and progressive five percent delinquency charge. Transient vessel mooring and/or dry-storage fees are due and payable in advance daily or weekly as applicable.

EXHIBIT

tabbies

B

2

TO SECURE PAYMENT OF SLIP, MOORING DRY-STORAGE FEES AND/OR SERVICE CHARGES, PURSUANT TO CHAPTERS 713 AND 85, FLORIDA STATUTES, THE OWNER HEREBY GRANTS THE CITY A LIEN UPON THE ABOVE DESCRIBED BOAT, MOTOR AND ACCESSORIES.   IN THE EVENT THAT MOORING, DRY-STORAGE FEES, AND/OR SERVICE CHARGES HAVE NOT BEEN PAID, THE OWNER HEREBY AGREES THAT CITY SHALL HAVE THE RIGHT TO RETAIN POSSESSION OF SAID VESSEL UNTIL SUCH FEES AND/OR CHARGES ARE PAID, SAID RIGHT OF RETENTION SHALL INCLUDE BUT NOT BE LIMITED TO SECURING THE BOAT BY ANY MEANS NECESSARY TO PREVENT ITS REMOVAL AND/OR PLACING SAID VESSEL IN DRY STORAGE.   IF SLIP, MOORING AND/OR DRY-STORAGE FEES REMAIN PAST DUE FOR A PERIOD OF SIX (6) MONTHS OR SERVICE CHARGES HAVE NOT BEEN PAID FOR A PERIOD OF NINETY (90) DAYS, THEN IT IS HEREBY MUTUALLY AGREED BETWEEN OWNER AND THE CITY THAT THE AFOREMENTIONED BOAT, MOTOR AND ACCESSORIES MAY BE SOLD BY THE CITY AT A NON-JUDICIAL SALE AS PROVIDED BY CHAPTER 328, FLORIDA STATUTES, IN ORDER TO SATISFY SAID LIEN.

In addition to any other remedies provided for in this Agreement, the Marina, as a provider of necessities to this vessel, has a maritime lien on the vessel and may bring a civil action in rem, under 46 United States Code 31342 in Federal Court, to arrest the vessel and enforce the lien and shall not be required to allege or prove in such action that credit was given to the vessel.

3.      REMEDIES:  Without otherwise limiting any other remedies as provided for by this Agreement, the City may pursue any other remedy provided by law.  In the event a sale of the vessel is made as provided by statute or other collection procedure or legal action is required to collect any amount due under this Agreement, the Owner agrees to pay all costs of the sale and/or collection and a reasonable attorney's fee.  Notice of non-judicial sale will be mailed to the owner at the address indicated herein  The Owner is responsible for notifying the Marina of any change in address.

4.      NOTICE:  The Owner agrees to notify the Marina in writing of any change in the information furnished by the Owner in this Agreement and any ownership change of the vessel within twenty-four (24) hours following such change  Failure to so notify City within said period of time shall be a default under this Agreement.

Any notification to the Owner pursuant to any of the provisions of this Agreement shall be sufficient if mailed to the mailing address as set forth in this Agreement.

5.      ASSIGNMENT:  It is understood and agreed that this Agreement is not assignable and that neither the dockage, nor the dry-storage may be assigned to others.  Sub-leasing of moorings or dry-storage is strictly prohibited.

6.      RENEWAL:  This Agreement shall be renewed automatically each month unless terminated by either party in the manner provided herein.  The City reserves the right to change daily, weekly, and monthly rates.

7.      SECURITY:  The City makes no warranties or representations concerning security at the premises, either for the facility in general or for the Owner's property in particular, including any means of ingress or egress thereto, or with regard to having an agent or employee on the premises

8.      BOAT REGISTRATION/DOCUMENTATION.  The Owner hereby agrees to provide current state, federal, or foreign power registration and/or documentation at the time of signing this Agreement and each time the Agreement is renewed or at any time upon demand of the City Manager, Marina Director, or Dock Master.

9.      REPAIRS:  Only repairmen authorized by the City may enter the City's premises for the purpose of making repairs on the Owner's boat

RIVIERA MARINA – *FLORIDA'S FINEST*

3

10    RULES/REGULATIONS: The Owner hereby agrees to abide by the rules and regulations set forth herein and any additional rules which from time to time may be conspicuously posted on the premises. Employees of the City are not authorized to deviate or alter these rules or regulations except by specific authorization from the City's Marina Director.

11    TERMINATION: This Agreement may be terminated upon any of the following conditions:

By breach, forfeiture, or default of any of the covenants or provisions of this Agreement, or by violation of any statute, ordinance, Marina rule or regulation or as otherwise provided in this Agreement.

By written notice of termination by the City delivered to the owner at the address specified at least three (3) days prior to the effective date of termination. The Owner hereby agrees to remove the vessel from the City's premises by the date specified.

By written notice of termination from the Owner delivered to the Marina Director or his designee, accompanied by tender of unpaid fees or charges, if any. At that point, the Owner may remove the vessel from the City's premises. The minimum term of this Agreement is one month, and it is mutually agreed that there will be no refund of the unused portion of any monthly charge when this Agreement is terminated by the Owner.

By bonafide sale or rental of the vessel described in this Agreement.

By the designated mooring, dockage area and/or dry storage space becoming unserviceable for any reason whatsoever.

By lapse of proper insurance coverage, or any other Modification or cancellation, which causes the insurance coverage to fail, or to be in full force and effect.

In no event will the Owner be relinquished from his/her duty to pay all unpaid fees or charges.

12    RISK OF LOSS: The Owner shall be solely responsible for properly securing the boat and any equipment thereon. The City assumes no responsibility for the boat, any equipment and/or other articles left aboard the boat, including but not limited to, radios, depth/fish sounders, navigational equipment, antennas, transducers, trim tabs, bimini tops, fishing poles, downriggers and/or outriggers.

The assigned space whether slip, mooring, or dry - storage space shall be occupied at the sole risk of the Owner. The City shall not be liable in any way for any loss or damage sustained by Owner or anyone claiming by, through or under Owner arising out of any action or inaction by the City, its employees and/or agents in connection with the City's premises, the use of the assigned space, or in connection with the Owner's boat, motor and/or accessories while it is on the premises. Nor shall the City be liable for any loss or damage to the Boat, its equipment or property stored thereon, due to fire, theft, vandalism, collision, City equipment failure, wind storm, rain, hurricane or other casualty loss.

13.   INDEMNIFICATION: The Owner for himself, his heirs, successors, executors, administrators, and assigns hereby waives any right it has to claim any loss or damage sustained by Owner or anyone claiming by, through or under Owner arising out of any action or inaction by the City, its employees and/or agents in connection with the City's premises, the use of the assigned space, or in connection with the Owner's boat, motor and/or accessories and/or due to fire, theft, vandalism, collision, City equipment failure, wind storm, rain, hurricane or other casualty loss while it is on the premises.

Owner agrees to indemnify the City against all claims, actions, liability and damages, including attorney's fees, whether claimed by the owner, its guests, family, employees, agents or other third parties, arising out of the Owner's possession and/or use of the assigned space and other facilities of the Marina.

**RIVIERA MARINA – FLORIDA'S FINEST**

4

Owner agrees to indemnify the City from and against any claim, suit, loss, liability of costs, including attorney's fees, arising out of, or resulting from, any use, operation or occupancy of the Boat by Owner or anyone claiming by, through or under Owner.

14. INSURANCE: The Owner hereby agrees and covenants for the term of this Agreement to maintain a Marina and watercraft liability insurance policy(s), copies of which shall be given to the Marina within five (5) days of signing this Agreement. Said insurance shall be in operative force and effect throughout the term of this Agreement, or any extension hereof.

15. OWNERSHIP/AUTHORITY: The person signing below does certify that he is the lawful Owner of the vessel hereinabove described or is authorized by the Owner to subject such vessel to the provisions of this Agreement.

Part ownership of a vessel does not in any way imply an obligation on the part of the City to furnish dockage or dry-storage to any persons other than the original signer of this Agreement. In the event of dissolution of a corporation, partnership, or any other entity, or the withdrawal of a part owner from such a partnership, or other entity, all parties shall nonetheless be bound by the terms and conditions of this Agreement and be obligated to the City for the payments of all sums due and the performance of all its covenants, terms and conditions.

16. VENUE: This Agreement and any dispute, disagreement, or issue of construction or interpretation arising hereunder whether relating to its execution, its validity, the obligations provided therein, performance or breach shall be governed and interpreted according to laws of the State of Florida. Any and all legal action necessary to enforce the agreement will be held in Palm Beach County, Florida. No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any party of any right, power, or remedy hereunder shall preclude any other or further exercise thereof.

17. SEVERABILITY: If any term or provision of this Contract, or the application thereof to any person or circumstances shall, to any extent, be held invalid or unenforceable, the remainder of this Contract, or the application of such terms or provision, to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected, and every other term and provision of this Contract shall be deemed valid and enforceable to the extent permitted by law.

18. INTEGRATION: This Agreement contains the entire understanding of the parties and may not be modified except in writing and signed by both parties.

I have read and fully understand and agree to all the terms and conditions as called by each and every one of them and do hereby voluntarily enter into this Agreement with the City.

As of this _____ day of _____, 20___.

_____
(Owner)

_____
(Parent or legal guardian, if owner is under 19 years old)

   

RIVIERA MARINA – FLORIDA'S FINEST



# CITY OF RIVIERA BEACH

200 EAST 13TH STREET
PHONE (561) 842-7806

RIVIERA BEACH, FLORIDA 33404
FAX (561) 845-8197

OFFICE OF
CITY MARINA

*Via hand delivery & U.S. Mail*

Mr. Fane Lozman                                          August 18, 2006
2100 Broadway
Riviera Beach, FL 33404

Dear Mr. Lozman:

On August 9, 2006, I wrote you a letter terminating your dockage agreement for violation of the Marina Agreement and Rules and Regulations of the Marina. In that letter the City gave you until August 31, 2006, to vacate the Marina on the condition that you muzzle your dog whenever you had him in any public space within the Marina. It is with regret that the City has to retract the deadline of August 31, 2006. Because you have refused to abide by the request to muzzle your dog, and have violated more rules and regulations as explained below, the City is hereby terminating your Wet Slip Agreement dated 3/10/06 in accordance with section 11 entitled "Termination," paragraphs one and two which provide:

11. TERMINATION: This Agreement may be terminated upon any of the following conditions:

By breach, forfeiture, or default of any of the covenants or provisions of this Agreement, or by violation of any statute, ordinance, Marina rule or regulation or as otherwise provided in this Agreement.

By written notice of termination by the City delivered to the owner at the address specified at least three (3) days prior to the effective date of termination. The Owner hereby agrees to remove the vessel from the City's premises by the date specified.

As you are aware I have asked you, on numerous occasions (verbally and in writing), to please muzzle your dog when he's in public spaces because other tenants have complained about his violent behavior—behavior that I have witnessed first hand. Although you initially complied with this request, in the last couple of weeks you have disregarded the request and allowed your dog to go un-muzzled, barking and snapping at tenants and other pedestrians.

"The Best Waterfront City In Which To Live, Work and Play"



Next, you continue to make major boat repairs despite repeated demands that you cease and desist. Initially, when during the weekend of August 12th through 14th, you first removed the upper west wall of your vessel and illegally dumped it on our city street we (Asst. Chief Harris, you & I) discussed the matter and you agreed to remove the illegally dumped wall from the City street. In turn, Asst. Chief Harris and I allowed you to put up a new wall that day and you agreed *NOT* to do any further work in violation of Marina Rules and Regulations (sections 8 & 9), i.e., you agreed to do no further major repairs on your vessel. However, you blatantly violated the promise you made to Asst. Chief Harris and me by doing extensive roof work and ignored my written demand to stop work and remove construction material from the upper deck of your boat. This demand was for the safety and welfare of the public.

Moreover, you repeatedly violate section 9 of the Wet Slip Agreement which requires that "[o]nly repairmen authorized by the City may enter the City's premises for the purpose of making repairs on the Owner's boat." The City only allows licensed insured craftsmen to do repairs within the Marina facility, but the person you hired has no license or insurance. Further, you did not seek or receive authorization to have him work on your vessel. Although the City has repeatedly stopped your repairman from doing the work, as late as today, he was back making repairs on your vessel.

The City can no longer allow you to blatantly disregard its Wet Slip Agreement and its Rules and Regulations. Therefore, for the reasons stated above, and in accordance with section 11 of the Wet Slip Agreement, please allow this letter to serve as written notice that your Wet Slip Agreement with the City of Riviera Beach is terminated effective August 21, 2006. You shall have seven (7) days from August 21, 2006, to vacate the premises, i.e., August 28, 2006. Failure to remove your vessel by August 28, 2006, will result in eviction proceedings being filed against you.

Sincerely,

George A. Carter
Marina Director


Cc: Gloria Shuttlesworth, Asst. City Manager
     City Files

GC/rs

"The Best Waterfront City In Which To Live, Work and Play"



# CITY OF RIVIERA BEACH

**200 EAST 13TH STREET**          •          **RIVIERA BEACH, FLORIDA 33404**
**(561) 842-7806**                                  **FAX (561) 845-8197**

OFFICE OF
CITY MARINA

July 25, 2007

Subject: New Marina Dockage Agreement

Dear Marina Customer:

Please be advised that the City of Riviera Beach City Council passed a resolution on June 20, 2007, approving a new Marina Dockage Agreement (with Exhibits) and new Rules and Regulations (hereinafter collectively referred to as "Agreement"). Although the new Agreement technically goes into effect on September 1, 2007 (pursuant to the resolution), all current marina customers will be given until September 30, 2007, to turn in a signed Agreement. Any vessel that does not meet the requirements of this new Agreement will be required to vacate the marina by October 1, 2007.

The new Agreement will require, among other things that all vessels have marina insurance with limits set at $500,000 Bodily Injury & $500,000 Property Damage or $1,000,000 combined single limit. This insurance requirement is necessary to insure not only your vessel but to protect the marina and other vessels from damage costs caused by your vessel. In addition, the Agreement requires all vessels to have valid registration or documentation, all vessels are to be operational and be able to vacate their slip under their own propulsion in case of an emergency, and it requires that your vessel comply with the Florida Clean Vessel Act (a copy of which can be reviewed at the Marina office). Finally, all owners will be required to pay one month's rent as a security deposit.

The new Agreement is enclosed for your review and execution. Again, if you cannot meet the terms of the Agreement, you will be required to vacate the Marina by October 1, 2007, or face eviction. If you have any questions, please do not hesitate to contact the Marina Office.

On behalf of the entire Marina staff, we look forward to working with you to make the Marina one of the safest in South Florida. Thank you for your attention to this matter.

Sincerely,

Douglas E. Mason
Interim Marina Director

Enclosures: Marina Dockage Agreement and Rules and Regulations

**EXHIBIT**
D

First Contract Mail Out
July 23, 2007
Fane Lozman

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

City of Riviera Beach MARINA
200 EAST 13TH STREET
RIVIERA BEACH, FL 33404

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FANE LOZMAN
9100 BROADWAY
RIVIERA BEACH, FL 33404

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name )      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540



# CITY OF RIVIERA BEACH

**200 EAST 13TH STREET**
**(561) 842-7806**

•

**RIVIERA BEACH, FLORIDA 33404**
**FAX (561) 845-8197**

**OFFICE OF**
**CITY MARINA**

April 22, 2008                          Ref#  3311 /   453

Fane Lozman
2100 Broadway
Riviera Beach, Fl 33404

Subject: Non-compliance with Marina Dockage Requirements and Notice of Liability for Costs

Dear Mr. Lozman,

As you are aware, the City of Riviera Beach's "Marina Dockage Agreement" contains certain requirements for insurance coverage and limits, registration information, condition of the vessel, and other essential elements that must be complied with. You were notified by our letter dated January 25, 2008 that you had not provided the Marina with certain required information and/or a signed agreement. As you know, the City's agreement to lease its slips is a month-to-month agreement which contains termination provisions for non-compliance, among other stipulations. Since you were being provided dockage in the Marina before the new "Marina Dockage Agreement" became effective, we have not yet taken formal action to enforce our rights against you and your vessel under the general maritime law for non-compliance. However, procedures are being implemented immediately to take the necessary steps to enforce the City's rights under the general maritime law.

Please be advised that as long as your vessel remains at the Marina during this process, you are liable for the payment of all fees, costs, and other necessaries incurred by you and your vessel, including any costs associated with enforcement of liens on your vessel. Additionally, you are responsible for complying with all of the Marina's rules, regulations, and the provisions of the new "Marina Dockage Agreement." The City's acceptance of any payments made by you does not imply or otherwise indicate that you are considered in compliance with the new "Marina Dockage Agreement" or any of its provisions to which you are currently considered to be in violation.

We appreciate your assistance in this matter.

Sincerely,

Paul D. White
Assistant City Manager/Interim Marina Director
City of Riviera Beach Municipal Marina

1

**EXHIBIT**
E

Second Contract Mail Out
April 30, 2008
FANE LOZMAN

UNITED STATES POSTAL SERVICE
WEST PALM BCH FL 33406

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

City of Riviera Beach Municipal Marina
200 East 13th street
Riviera Beach, FL 33404

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fane Lozman
2100 Broadway
Riviera Beach, Fl 33404
3311 \ 453

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Riviera Beach Marina

Survey File 8052

| Yellow & White House Boat North East Pier 4 | |
|---|---|
| Owner should provide proof of current insurance to include liability and coverage for salvage if the craft sinks<br><br>Barge bottom is due for cleaning and renewal of antifouling paint. Owner should haul the craft, clean the bottom and renew antifouling paint or barrier coatings as needed.<br><br>Owner should have the bottom inspected by a Marine Surveyor during haul out, comply with all recommendations and submit a report that the barge bottom is in good condition.<br><br> | <br><br> |

| Gray House Boat East end of Pier 4 | |
|---|---|
| East houseboat connected continuously to city water, owner has run hose under the dock to adjacent connection which is turned on and hose appears pressurized evidenced by seepage at the valve. This presents a sinking potential if a water system fitting breaks flooding the craft with fresh water<br><br>The electrical service second 50 amp shore cord is missing the connector and conductors are exposed.<br><br>Barge penetration where shore cords enter the craft is not sealed and cords are not chafe protected |  |

Milligan & Sparrow, Inc.



EXHIBIT
F

Page **12** of **15**

Riviera Beach Marina

| Gray House Boat |
| East end of Pier 4 |

Barge bottom is heavy with marine growth and suspect of deterioration

Dock lines are deteriorated, hanging in the water. Lines are not sufficient to prevent the craft from breaking loose.

Dock line attachment points at craft appear deteriorated and suspect of failing.

Starboard side of barge showing deterioration

Barge antifouling or barrier coat paint flaking from the barge forward side.

**Recommendations:**
Craft should be hauled and barge bottom cleaned, and coatings renewed with new.

Owner should have the bottom inspected by a Marine Surveyor during haul out, comply with all recommendations and submit a report that the barge bottom is in good condition.

Shore power cord missing the connector should be removed from the dock and placed aboard.

All dock lines should be removed and replaced with new of adequate size and scope to properly secure the craft.

Craft should not be connected to city water when not attended.

Owner should provide proof of current insurance to include liability and coverage for salvage if the craft sinks.

Owner should prove that all sanitation equipment is in compliance with Federal Regulations. Discharge of untreated waste is a violation.







Milligan & Sparrow, Inc.

Riviera Beach Marina

Survey File 8052



Gray House Boat
East end of Pier 4

**Conclusion:**

It is my opinion that the aforementioned house boats present the greatest peril to the marina in the event of a tropical or named wind storm. The gray house boat is poorly secured and the dock lines are deteriorated. The location where the boats are located is the least desirable for the safety of the marina. The area where the hose boats are docked is one of the most desirable locations and could easily be converted to accommodate several large motor yachts stern to the dock. I recommend that both dockage agreements are terminated or not renewed.

In the event the house boats remain in the Marina I recommend that both owners prove the hull integrity by hauling and submitting a professional inspection report. Management should consider placing both house boats alongside pier one where they can be secured to the concrete sea wall. I recommend that both house boat owners provide proof of insurance with sufficient liability and coverage for salvage and wreck removal in the event they break loose or sink.

## DINGHY DOCK SPUD BARGES:

During my inspection I observed that the marina is providing a dinghy dock for the transient anchorage vessels or anyone who would like to tie up consisting of three steel barges with a gangway to pier four.

Milligan & Sparrow, Inc.

Page **14** of **15**



# CITY OF RIVIERA BEACH

200 EAST 13TH STREET
PHONE (561) 842-7806

RIVIERA BEACH, FLORIDA 33404
FAX (561) 845-8197

OFFICE OF
CITY MARINA

March 6, 2009

FILE

Fane Lozman
2100 Broadway
Riviera Beach, FL 33404

RE: FINAL NOTICE ACCT. # 3311, AND TRIUMPHANT

Dear Fane Lozman:

As a condition of docking your vessel at the City of Riviera Beach Marina, you are required to execute the "Marina Dockage Agreement," which contains, among other provisions, requirements to show proof of insurance coverage to specified limits, provide registration information, and maintain your vessel to acceptable safety standards. You have been previously advised of these conditions, and have been given ample time to come into compliance. To date, you have failed to execute the agreement, or otherwise meet the requirements to dock your vessel at the Marina.

Further, your vessel has received dockage and other necessaries for which you have failed to pay, and your account is seriously delinquent in the amount of **$2,537.83**. As a result of this and your failure to comply with Marina requirements, you are *trespassing*. **You are directed to remove your vessel from the Marina within fifteen (15) days from the date of this letter.** After this, you will be liable for the current Marina transient rate of $1.50 per foot for every day the vessel remains docked without permission.

Should your vessel remain and you fail to pay your account in full, execute the "Marina Dockage Agreement," and otherwise bring your vessel into compliance with the Agreement's provisions by **April 1, 2009**, the City will promptly institute legal proceedings against you and your vessel for trespass and to foreclose the City's lien on your vessel, including interest, costs and attorney's fees. This notice is entirely without prejudice to any additional rights the City may have against you or your vessel.

Please govern yourself accordingly.



Edwin Legue
Marina Director

EXHIBIT

G

tabbies

Most Recent Mail Out
MARCH 10, 2009
FANE LOZMAN

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

Fane Lozman
2100 Broadway
Riviera Bch, FL 33404

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    □ Agent
                            □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

_____ M. J. Merehant _____

3. Service Type
   □ Certified Mail      □ Express Mail
   □ Registered          □ Return Receipt for Merchandise
   □ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number          7008 0150 0003 2546 8900
   (Transfer from service label)

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

WEST PALM BEACH
FL 334 81
10 MAR 2009 PM L

• Sender: Please print your name, address, and ZIP+4 in this box •

City of Riviera Beach Municipal Marina
200 East 13th street
Riviera Beach, FL 33404

**JS 44** (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)  **NOTICE: Attorneys MUST Indicate All Re-filed C**

Apr. 20, 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### I. (a) PLAINTIFFS

The City of Riviera Beach

**DEFENDANTS**

That certain unnamed, gray two-story vess
length, her engines, tackle, apparel, furniture, et al., in rem

**(b)** County of Residence of First Listed Plaintiff  Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jules V. Massee, Hamilton, Miller & Birthisel, LLP
100 S. Ashley Drive, Suite 1210, Tampa, FL 33602
(813) 223-1900

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

09 CV 80594 WPD/LSS

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                        and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus-Alien Detainee | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO  b) Related Cases ☐ YES ☑ NO

JUDGE                                           DOCKET NUMBER

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Action for damages under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, 46 U.S.C. § 31342, and Local Admiralty Rule C

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 3,174.38

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
April 20, 2009

FOR OFFICE USE ONLY

AMOUNT 350 00  RECEIPT # 725718 IFP